[Civ. Nos. 866, 867. Fourth Appellate District.—June 22, 1932.]

LLOYD LYNCH, Appellant, v. FRANK LYNCH, Respondent.

Curtis Hillyer and Irve C. Boldman, for Appellant.

Wright & McKee and C. M. Monroe, for Respondent.

Ray M. Harris, *Amicus Curiae* on Behalf of Appellant.

SCOVEL, J., *pro tem.*—There are two actions involved in this litigation. Judgment was entered in each in favor of the defendant and appeals were perfected from both judgments. Upon stipulation of counsel and an order of this court the appeals have been consolidated for hearing and determination.

It appears that in the year 1918, defendant was the owner of 3,000 shares of stock in the Benson Timber Company, an Oregon corporation, and 300 shares in the Benson Lumber Company, later reorganized as a California corporation. These shares represented three-fifths of the total issued capital stock of the respective corporations. In 1918, the defendant, a man well along in years, decided to give stock in these two companies to certain of his heirs, including the plaintiff, in order that they might during his lifetime receive some benefit from the earnings of the companies and also avoid the payment of inheritance taxes and the expense of probate proceedings at his death. He did not want to lose control of the two companies nor be obligated to pay to the heirs all of the dividends that might thereafter be declared upon their respective shares of stock, as considerable sums of money were necessary for the running of the companies. In order to carry out his plan, therefore, he had certificates issued in the names of the various heirs for the amount of stock that he desired to give to them, the transfer of the stock from himself to the heirs being noted in the stock transfer books of the corporations. Accordingly one certificate for 100 shares of stock in the Benson Timber Company, and a certificate for ten shares of stock in the Benson Lumber Company were issued in the name of the plaintiff. During the month of March, 1919, in response to a letter received from defendant, plaintiff came to San Diego. The defendant informed plaintiff that he was giving him the stock represented by the two certificates, but that he, the defendant, would collect all of the dividends on the stock and pay him interest thereon at the rate of five per cent per

annum; that upon his death the total amount of the dividends would be paid from his estate, but if it became necessary he would, if he were able, advance to plaintiff from time to time a portion of the dividends. He further explained to plaintiff that he desired to control the management of both corporations and that it would be necessary for plaintiff to execute a general power of attorney giving him the right to vote the stock. Plaintiff thereupon executed a general power of attorney wherein defendant was made his attorney-in-fact. Plaintiff was not shown the certificates of stock and at all times thereafter they were held in the possession of the defendant. For a period of some ten years dividends were regularly declared upon the stock, amounting to a total of some $68,000 at the time these actions were filed. During all of this time the dividends were collected by defendant, interest thereon at the rate of five per cent was paid to plaintiff, and, in addition thereto, advancements on the dividends in the sum of approximately $9,000 were paid, defendant executing, but retaining in his possession, notes payable to plaintiff for the amount of the dividends.

Shortly before the institution of these actions plaintiff revoked the power of attorney and thereafter filed the actions seeking, in action Civil No. 866, to recover possession of the above-mentioned certificates of stock, and in action Civil No. 867, an accounting and judgment for the amount of dividends collected and unpaid by defendant.

In answer to the complaint in action Civil No. 866, defendant denied that plaintiff was the owner of the certificates of stock, and alleged that the gifts or attempted gifts thereof were made upon condition that plaintiff would give defendant a general power of attorney authorizing him to vote the shares of stock, that defendant would retain in his possession during his lifetime the stock certificates, that he should collect all dividends paid upon the stock, execute notes thereof payable to plaintiff paying interest thereon at five per cent per annum. Defendant further alleged that plaintiff had broken the conditions and that he therefore elected to revoke the gifts. Defendant filed a cross-complaint in which he alleged practically the same facts set up in his answer, praying that the gifts be annulled and that the interest and dividends already paid be returned.

In answer to the complaint filed in action Civil No. 867 defendant alleged facts similar to those set forth in his answer in action Civil No. 866. He filed also a cross-complaint praying for a cancellation of the gift and return of the dividends and interest.

A complaint in intervention was filed in each action by Georgia A. Lynch, wife of defendant, alleging that the stock given to plaintiff was the community property of herself and the defendant, that she had never consented to the transfer and that therefore it was void under section 172 of the Civil Code.

The court found the facts to be substantially as alleged by defendant in his answer and cross-complaint, and, as a conclusion of law therefrom, determined that there was no completed gift of the corporate stock from defendant to plaintiff, but, that there was a completed gift as to the interest and dividends paid to plaintiff. Judgment was entered declaring defendant owner of the shares of stock and canceling the notes.

As to the complaints in intervention the court found that by reason of the fact that no title to the stock had passed it deemed it unnecessary to make findings with reference thereto and entered judgment dismissing the complaint. No appeal was taken from the judgment dismissing the complaints in intervention. These appeals are from the judgments entered in favor of defendant and cross-complainant on the complaints and his cross-complaints.

Appellant maintains that the finding that the defendant is the owner of the stock, and the judgment based thereon, is not supported by the evidence, and contends that the evidence shows a completed gift. ■ As set forth in 13 Cal. Jur. 32, the essentials of a completed gift are: (1) Competency of the donor to contract, (2) a voluntary intent on the part of the donor to make a gift, (3) delivery, either actual or symbolical, amounting to a transfer of title, (4) acceptance, actual or imputed, (5) a complete divestment of all control by donor, (6) a lack of consideration in return for the gift.

It is conceded that the defendant was competent, that no consideration was given and that plaintiff accepted the gift. We are of the opinion that the uncontradicted testimony also shows an intent on the part of the defendant

458

to make a present gift. The testimony of defendant himself admits of no other construction. He testified regarding the matter as follows: "It was a question in my mind whether to will all these different relatives a certain amount of my property or whether to give them some stock instead. If I had willed them the property they wouldn't have gotten any benefit until my death, but if I gave them, each of them, stock, then if there were any dividends paid why they would derive some benefits from the dividends or the interest on the dividends. . . . I concluded to give him this stock conditionally, reserving the right to always vote the stock because I had a majority of the stock at that time, and if I gave too much of it away I would be in the minority and that would put me in a bad position. So I wanted it fixed so I would always control the stock, and with that understanding and the agreement that Lloyd signed and all the rest of them, I transferred the stock and gave it to them conditionally on this agreement." (Referring to the power of attorney.) From this testimony it unmistakably appears that a present gift was intended, the defendant reserving only control over the stock as agent of plaintiff in order to continue the successful operation of the companies during his lifetime. ■ Defendant does not seriously dispute this matter but does vigorously contend that there was not a sufficient delivery or divestment of control to complete the gift.

It will be recalled that a portion of the stock held by defendant was actually transferred on the books of the corporation and a certificate therefor issued in plaintiff's name, defendant merely retaining possession of the certificate. In *Jean* v. *Jean*, 207 Cal. 115 [277 Pac. 313], it was held that under section 324 of the Civil Code a transfer upon the corporation books of shares of stock, together with the issuance of a new certificate, constitutes a *prima facie* case of transfer sufficient to create a legal delivery of the shares and the fact that the donor may retain a certificate does not necessarily overcome this *prima facie* showing. The force of this decision is recognized by defendant but he argues that the *prima facie* showing of delivery by transfer on the corporation books and the issuance of the certificates in the name of the plaintiff is overcome by the retention of control over the voting rights of the stock and

the reservation of the right to collect all dividends declared thereon. It has been decided in *Calkins* v. *Equitable Building & Loan Assn.*, 126 Cal. 531 [59 Pac. 30], however, that a gift of corporate stock is not voided by the fact that the donor reserves to himself the right to the dividends declared upon the stock during his lifetime.

It will be recalled in the present case, also, that defendant did not reserve to himself the dividends but merely the use thereof during his lifetime, the total amount being payable to plaintiff after the death of defendant. Does the fact then that the defendant demanded the right to control the voting power of the stock constitute such a reservation of control as will invalidate the gift? In considering this matter it must be remembered that the right to control the stock was vested in defendant solely by virtue of the power of attorney given to him by plaintiff. In dealing with the stock, either in exercising the voting power incident thereto or otherwise, defendant was acting pursuant to such power and therefore as agent of the plaintiff and not as the owner of the stock. "A reservation by the donor of certain proprietary rights in the subject of the gift, such as the use and enjoyment thereof, is not necessarily inconsistent with the absolute character of the gift, and gifts accompanied by such reservations have been repeatedly upheld." (28 Cor. Jur. 647.)

Perhaps the example most illustrative of this rule would be the gift of a parcel of real property with a life estate therein reserved, the right to the use, possession and enjoyment thereof being retained in the donor as an incident of the life estate reserved. This principle is also announced in 12 Ruling Case Law, 936, as follows: "Under some circumstances, when all of the other requisites of the gift are present the donor may by declarations or otherwise constitute himself trustee of the property for the benefit of the donee, or the retention of possession by a donor may be accounted for by proof of an agreement to pay hire for the property given."

Unquestionably in the present case the defendant intended to control the stock merely as the agent of the plaintiff, otherwise, why was the power of attorney demanded by him? If he were the owner of the property no power of attorney from plaintiff would have been necessary in order

that he might exercise absolute control over the stock. The giving and taking of the power of attorney are wholly inconsistent with any reservation of title or ownership in defendant. So far as we have been able to find, the effect upon a gift of retention of control by the donor as agent for the donee has never been determined in California.

The principle involved, however, has been considered in *Lefrooth* v. *Prentice*, 202 Cal. 215 [259 Pac. 947, 950]. It there appeared that in the year 1916 the defendant desired to give certain bonds to his minor children. Accordingly the bonds were put in his safety deposit box in a trust company with instructions to the company to collect the coupons and credit the interest to the accounts of the children, each child having a separate account with the defendant as trustee. Upon the wrapper containing the securities for each child there was a memorandum, similar in each instance except as to the name of the child, reading as follows: "Memorandum: Deposited to Hillyer Prentice in the Union & New Haven Trust Company, New Haven, Dec. 25, 1912, held in trust the following: 10 Seattle Electric bonds"; etc. For a considerable period of time, the money was collected by the trust company and deposited in the respective accounts. The money in these accounts was used to pay for the schooling and current expenses of the children. The defendant later disposed of the bonds and used the proceeds for his own purposes. He afterward came to San Diego and purchased a parcel of real property, and, becoming financially involved, conveyed the real property to the children. The action was filed by his creditors to set aside the conveyance on the ground that it was without consideration and in fraud of creditors. The defendant contended that the conveyance was made to repay the children for the securities which he had disposed of as above set forth. The question as to whether an actual and completed gift of the securities had been made was therefore involved. The court held that no delivery of the bonds was shown since the defendant retained possession thereof, and that the memorandum, being unsigned and containing no words of grant, was insufficient as an assignment. It was further contended that the defendant, by depositing the bonds in the safety deposit box with the memorandum set forth, thereby became a trustee for the children, but the court held that the memo-

randum was not sufficient to constitute a valid trust in the securities but did recognize that under certain circumstances a donor may make a gift and retain custody and control of the subject of the gift as a trustee.

If a donor may retain custody and control of the subject of the gift as trustee, we can see no reason why such custody and control might not be retained as agent of the donee. ■ We are of the opinion that a donor may retain custody and control over the subject of the gift where such possession and control relates only to the use and enjoyment thereof and does not vest in the donor any interest or title in the property itself, and that where such custody and control is to be exercised by the donor as agent of the donee, all other essentials of a completed gift existing, the gift is not thereby affected or invalidated.

Defendant cites *Lefrooth* v. *Prentice, supra,* as contrary to our holding as above set forth. The court there held that the mere deposit of the bonds in the donor's safety deposit box with an unsigned memorandum that they were held in trust for certain donees did not constitute sufficient delivery to vest title thereto in the donees. The subject of the attempted gift was bonds, negotiable by written assignment or by manual transfer without assignment. By retaining custody and control, and without a written assignment, it quite clearly appears that no delivery, either actual or symbolical, was ever made. As set forth in *Jean* v. *Jean, supra,* the rule in regard to stocks is that a sufficient symbolical delivery is made when the transfer is noted on the corporation books and a new certificate issued in the name of the donee. The distinction between *Lefrooth* v. *Prentice, supra,* and the case at bar is apparent.

We are of the opinion that, when the stock was transferred on the books of the corporation in 1918 and a certificate issued in the name of the plaintiff and accepted by him, and a power of attorney in turn given by him to defendant, a present and completed gift of the stock was made. It therefore follows that the judgment must be reversed.

In remanding the case for retrial certain matters should, however, be mentioned. The court found that at the time the gift was made certain conditions were attached thereto. Since no conclusion of law was made therefrom, the effect

upon the gift of such conditions is not involved in this appeal and we do not decide the effect thereof. It will be recalled that the complaints in intervention were dismissed by the trial court without any findings upon the issues of fact raised therein. The dismissal not having been made upon the merits is not a bar to the consideration thereof upon the retrial of the case. (*Slacker* v. *McCormick-Saeltzer Co.*, 179 Cal. 387 [177 Pac. 155]; *Hogeberg* v. *Industrial Acc. Com.*, 201 Cal. 169 [256 Pac. 413].)

The judgments appealed from are reversed and a new trial ordered.

Barnard, P. J., and Jennings, J., concurred.